[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
In this dispute between the City of West Haven and the defendant, a developer of rental properties, the parties have resolved most of the differences that were originally presented to the court at a hearing this past March. At that time, the City was seeking to enjoin the defendant from renting housing units in the former First Avenue School, claiming numerous building and fire code violations existed.
By stipulation of the parties, the seven areas of disagreement remaining were outlined in a submission to the court. The parties and the court revisited the premises in preparation for the presentation of evidence by each party in support of its position.
In evaluating the positions of these parties, the court notes that many of the code sections and regulations involved in this litigation are susceptible to conflicting interpretation.
I — Submission #5
At the rear of 840 First Avenue, there is a stairway leading to the first floor level. The side railings did not extend beyond CT Page 2236 the point to which the stairs reach. The building code requires that railings extend beyond the top and bottom stairs so that a feeble or handicapped person can safely negotiate the entire stairway area by holding on to the railing.
It is the conclusion of the court that this railing should be modified by adding the extensions described above.
II — Submission #6
The court finds that by rendering this door inoperable except for mechanics who would remove pins to open it and service the equipment behind it, the defendant has satisfied the City's requirements. Unit F-18 is protected from any improper use of this door.
III — Submission #4
This involves Unit F-10 which was originally set up to be used as a den. When the City objected to that use because it lacked a second means of egress, the defendant agreed to convert it to a large walk-in closet with shelving, etc. This satisfied the building inspector, but the fire marshall objects on the grounds that a tenant can return the area to its prior condition after approval. This can be said of numerous other uses in this building and other buildings. In fact, the court is of the impression that that is one of the reasons for ongoing building and fire inspections. The court concludes this unit now conforms to the City's requirements. If it is converted to a den or other "living area," a second means of egress must be created.
IV Submission #2
Because this building contains several dwelling units, fire doors bearing an underwriter's certification are required. The status of the fire doors at 840 First Avenue came into question because the laboratory which tested and certified these particular doors and the their manufacturer terminated their relationship. As of a particular date, the laboratory's labels were not valid. Thus, the date of manufacture became an issue and correspondence from the laboratory and the manufacturer failed to resolve the doubt raised by the West Haven Fire Marshal's Office. At the hearing on these matters, the defendant presented the testimony of David Watson, operations manager of the manufacturer.
After hearing Mr. Watson and his references to the correspondence, the court concludes that the fire doors in question were and are properly certified and conform to the fire code requirements. CT Page 2237
A further objection to these doors was raised by the fire marshal in that the glass windows in the doors were not held in place by putty but by caulking material.
It is the conclusion of the court that this issue is best resolved by having the present material removed and replaced with a suitable glazing compound. This would appear to put these doors in full compliance.
V — Submission #3
The disagreement under this item involves Unit F-3, specifically whether the area adjoining the kitchen appliances and cabinets should be classified as a "kitchen" or "dining area," or, as the City claims, a "living area." Under the state building code, a "living area" in an apartment requires a separate means of egress. The area in question does not.
Unfortunately, the definition of "living area" in the code is ambiguous. The court heard the opinion of an engineer with over 25 years experience in the building field who did not consider this a "living area." The state building official who testified felt this was not a kitchen because it "can be used for other purposes." His recollection of the physical layout of the premises was incorrect so the court questions the basis of his opinion.
From two visits to the premises, the court notes that the area in question is the only logical place for the residents to take their meals. It is actually part of the same enclosed area which contains all of the kitchen appliances and cabinets — these along one wall. There is a wide exit area into the living room and this exit area is on a straight line to the front door.
For all of these reasons, the court cannot subscribe to the City's position that though it is furnished as a dining area, it can be used as a "living area" and thus is a "living area." This area of Unit F-3 is a dining area and does not require a separate means of egress.
VI — Supplemental Submission
This item involves a rear stairway, constructed anew by the defendant to provide emergency egress for two apartment units on the second floor. The defendant concedes that the treads and risers do not comply with the state building codes "7-11" standard. Instead of seven inch risers and eleven inch treads, the offending stairway has seven and five-eighths inch risers and the first riser measures seven and seven-eighths inches. The treads comply. CT Page 2238
Though the City has no complaint with this stairway and has even supported the defendant's application to the state building department for a waiver, the state building inspector has denied the request.
The defendant offered expert testimony to the effect that under the state code, this stairway is not required to comply with the 7-11 standard because it is not a public stairway. It exists only as emergency egress from the rear of two apartments. The state building inspector disagrees with the proposition that this stairway is excluded from the 7-11 standard as would a fire escape.
The defendant also pointed out that having placed the doorways to apartments on the first and second floors, modifying this stairway now would encroach on those openings and violate other code requirements. Re-building this stairway would also be quite expensive, but hardship considerations apparently carry no weight in the state appeal process, as there is no written policy pertaining to claims of hardship. The defendant's application was denied without anyone from the office of the state building inspector viewing the premises.
The court concludes that the position of the state building inspector is unreasonable under the circumstances and the defendant should be permitted to retain and utilize the existing stairway.
The court is concerned, however, about the variance in height between the first riser and the rest of the flight. Therefore, the defendant is ordered to correct that defect so that the first riser measures the same as the others. An unsuspecting user could suffer a fall because of this discrepancy in height.
VII — Submission #1
This item involves a shaft with runs from the basement laundry room to the roof of the building. It contains the laundry exhaust system, the venting system for the boiler, and serves as a cold air return.
In view of the state of the evidence as to this item, the court will defer action on this submission. The court accepts the suggestion of counsel for the parties to hold a further conference to discuss questions raised by this item.
Anthony V. DeMayo, Judge CT Page 2239